Lena DUNCAN and Walter
Duncan, Appellants,

v.

Roney J. WILEY and Peggy
Wiley, Appellees.

No. 55657.

Court of Appeals of Oklahoma,
Division 1.

Nov. 23, 1982.

Released for Publication by
Order of the Court of Appeals
Dec. 23, 1982.

David Harris, Stilwell, for appellants.

Charles R. Fisher, Stilwell, for appellees.

WILSON, Presiding Judge:

■ At issue in this case is the trial court's appointment without notice of non-Indian successor guardians for three parentless Indian children.

Lena and Walter Duncan, fullblood Cherokee Indians, are the paternal grandparents of Donovan, Don Wayne and Steward James Duncan. The boys' parents are deceased. On September 18, 1979, Linda Littledeer, one of the boys' aunts, petitioned the court for Letters of Guardianship.

Lena and Walter were present at the hearing on Linda's petition. Roy Duncan, Lena and Walter's son, and his wife, Mary, also petitioned the court for Letters of Guardianship. The trial court issued Letters to Linda Littledeer October 15, 1979.

On March 11, 1980, Linda Littledeer resigned as guardian of the boys and nominated Roney and Peggy Wiley as her successors. The Wileys were appointed as successor guardians March 12, 1980. The appointment was made without notice to the grandparents.

On May 14, 1980, Lena and Walter petitioned the court to set aside its order appointing the Wileys. Lena and Walter argued that, as the boys' next of kin, they were entitled to notice of the pending appointment. Lena and Walter urge that the appointment was made in derogation of their Constitutional due process and equal protection rights. Further, Lena and Walter asserted that they were the fit and proper custodians of the boys.

■ The Wileys filed a Demurrer. No record was made of the hearing. The narrative statement of the proceedings filed by Appellants pursuant to Rule 1.22, which was uncontroverted, states that Lena and Walter "repeatedly requested" a record of the hearing. The request was not allowed by the trial court. This alone constitutes a denial of due process requiring reversal. 20 O.S.1981 § 106.4(a); *Funnell v. Cannon*, 577 P.2d 1287 (1978).

Lena and Walter perfected this appeal from the trial court's sustention of the Wileys' Demurrer.

On appeal, Lena and Walter confine their arguments to the rights and duties imposed by the Federal Indian Child Welfare Act, 25 U.S.C. §§ 1902 *et seq.* Specifically, the Duncans urge that § 1912 entitled them to notice of the pending successor guardian appointment.

The legislative history of the Act reveals that a disproportionately large percentage of Indian children were removed from their family units for placement in non-Indian foster or adoptive homes. Testimony indicated that misunderstanding of Indian family concepts by state social workers prompted many of the removals. Concomitantly, lack of understanding of legal concepts by the Indian parents resulted in unknowing waivers of rights. *See,* 1978 U.S.Code Cong. and Admn.News, pp. 7530 *et seq.*

The Indian Child Welfare Act of 1978 attempts to protect the rights of Indian children and to promote tribal stability by establishing minimum Federal standards for removal of Indian children from the family unit. 25 U.S.C. § 1902. As part of this plan, notice of pending involuntary state court proceedings must be given the parents or Indian custodian and the tribe. 25 U.S.C. 1912.

■ The notice requirements of § 1912 are mandatory in involuntary actions. The requirements do not apply to voluntary court proceedings such as the guardianship action involving the Duncan boys. Instead, the Act provides strict procedures for a parent's or Indian custodian's voluntary relinquishment of custody. 25 U.S.C. § 1913.

In this regard, the Act establishes preferences for the placement of Indian children in foster or pre-adoptive homes. The statute provides:

.  .  .  .  .

(b) Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity of his or her home, taking into account any special needs of the child. In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—

(i) a member of the Indian child's extended family;

(ii) a foster home licensed, approved, or specified by the Indian child's tribe;

(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

(c) In the case of a placement under subsection (a) or (b) of this section, if the Indian child's tribe shall establish a different order of preference by resolution, the agency or court effecting the placement shall follow such order so long as the placement is the least restrictive setting appropriate to the particular needs of the child, as provided in subsection (b) of this section. Where appropriate, the preference of the Indian child or parent shall be considered: *Provided,* that where a consenting parent evidences a desire for anonymity, the court or agency shall give weight to such desire in applying the preferences. 25 U.S.C. § 1915.

The guardianship statute is silent on whether notice of pending successor guardian appointments is required. 58 O.S.1981 § 875. In the seminal case construing the statute, *In re Chambers' Guardianship,* 46 Okl. 139, 148 P. 148 (1915), this Court held that notice was not required. However, the aggrieved party in *Chambers* was the guardian who was removed without notice by the court for mismanagement of his ward's funds. The same rule was applied in *Crosbie v. Brewer,* 68 Okl. 16, 158 P. 388 (1916). In *Crosbie,* the parents of a full-blood Choctaw Indian relinquished custody of one of their sons. The parents subsequently moved to another county where they attempted to have another guardian appointed for their son. The issue was which court had jurisdiction to appoint the guardian.

By these holdings, the District Court of Adair County has jurisdiction to appoint a successor guardian for Donovan, Don Wayne and Steward James Duncan. In a subsequent proceeding to appoint wholly new guardians, the interested parties of the first proceeding must be accorded their due process rights of notice and opportunity to be heard. The Indian Child Welfare Act prescribes the criteria governing the placement of the Duncans in a guardian's care and custody.

The Wileys' Demurrer should not have been sustained. The order appointing the Wileys as successor guardians without notice was improper.

Accordingly, we remand the case to the District Court of Adair County for a hearing on Linda Littledeer's Resignation and Nomination of Successor Guardians to be held in accordance with 58 O.S.1981 § 761 and the provisions of the Indian Child Welfare Act.

REVERSED AND REMANDED.

REYNOLDS and BOX, JJ., concur.